IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


JERRY D. BROWN,                          )
                                         )
                        Plaintiff,       )      **CIVIL ACTION**
                                         )
v.                                       )      No.  11-1307-MLB
                                         )
CITY OF BEL AIRE, KANSAS, et al.,        )
                                         )
                        Defendants.      )
_____ )


<u>**MEMORANDUM AND ORDER**</u>

     This case comes before the court on defendants' motion to enforce settlement.  (Doc. 39).  The motion has been fully briefed and is ripe for decision.  (Docs. 40, 45).  The court held an evidentiary hearing on January 28.  Defendants' motion is granted for the reasons herein.

**I.   Facts**

     Plaintiff filed a complaint against defendants on October 10, 2011, alleging civil rights violations of excessive force and unlawful arrest.  Plaintiff alleged that he was injured in October 2010 after being placed under arrest by defendant Matthew McGuire, an officer for the Bel Aire police department.  After his injury, plaintiff was prescribed Loratab, a pain medication, to take on an as needed basis. Plaintiff did not take the medication frequently because he did not like the effects.  Plaintiff testified that on August 16 he had taken two Loratabs.

     At the time the original complaint was filed, plaintiff was represented by Sara Loquist.  On June 14, Loquist moved to withdraw as counsel.  Loquist's motion was granted on July 18.  On July 20,

plaintiff participated in a telephone status conference with Magistrate Judge Waxse and defense counsel Jaime Blackwell. The magistrate informed plaintiff that he had two options in this case: plaintiff could proceed pro se or obtain new counsel prior to the next status conference to be held on August 17. In addition, the parties had to submit a revised planning report to the court by August 15.

Blackwell called plaintiff on August 14 and introduced herself as counsel for defendant. Blackwell asked plaintiff if he had retained counsel and plaintiff responded that he had not. Blackwell and plaintiff then had an extended discussion regarding plaintiff's attempts to retain counsel. Blackwell asked plaintiff how much money he would need to settle the case. Plaintiff informed Blackwell that he would need $100,000. Blackwell stated that she was not authorized to agree to that offer and that she would call him back the next day. Plaintiff sounded frustrated during the call but Blackwell did not believe that plaintiff was under the influence of medication. Plaintiff testified that he had recently been in contact with an attorney from Missouri and believed that he would be represented. The attorney declined to represent plaintiff and plaintiff had to travel to Springfield, Missouri the next day to retrieve his files. Plaintiff had contacted approximately thirty different attorneys seeking representation and was unsuccessful.

On August 15, Blackwell called plaintiff and again asked him if he had retained counsel. Plaintiff stated that he was in Missouri picking up his case files and was going to take them to another attorney. Blackwell again discussed plaintiff's options as stated by the magistrate judge during the status conference. Blackwell also

told plaintiff that he could dismiss without prejudice and refile within six months when he obtained counsel. Plaintiff then asked Blackwell if she could make him an offer. Blackwell informed plaintiff that she would call him back after speaking to her client. At the time of the call, Blackwell did not believe plaintiff to be under the influence of medicine. Blackwell spoke with the insurance adjuster and received authorization to offer $5,000. Blackwell called plaintiff and left him a voice mail message.

Plaintiff did not return Blackwell's call on August 15. On August 16 at approximately 12:30 in the afternoon, Blackwell called plaintiff and again asked him if he had retained counsel. Plaintiff informed Blackwell that he had an appointment scheduled for later that day. Plaintiff stated that he would rather settle the case before an attorney was involved. Plaintiff asked Blackwell what the settlement offer was. Blackwell informed plaintiff that she was authorized to offer him $5,000 to settle the case. Plaintiff responded that his upcoming surgery was going to cost him $15,000 and that he would need at least $20,000 to settle. Blackwell said that she would call her client.

Blackwell spoke with the insurance adjuster and was authorized to offer plaintiff $10,000. Blackwell called plaintiff at approximately 1:00 p.m. to inform him of the offer. After a short moment of silence, plaintiff said, "I can do that, we can settle the case for $10,000." Plaintiff asked Blackwell when he could get the check. Blackwell told him that she would call the insurance company and get back to him. Plaintiff also asked Blackwell if he would owe anyone out of the settlement proceeds. Blackwell told plaintiff that

-3-

she did not know the answer to that question and could not advise him on that matter.   At approximately 2:00 p.m., Blackwell called plaintiff and told him that she would have the check by the next day at the latest.   Blackwell stated that she would draft the settlement paperwork for him to sign and he could pick up the check on August 17. Plaintiff agreed.  After the conversation concluded, Blackwell emailed the magistrate judge's chambers to inform the court of the settlement. Blackwell included plaintiff's email address in the email.

Blackwell received the check at 4:00 p.m. on August 16.   At approximately 4:30 p.m., Blackwell received an email stating that plaintiff was represented by Cheryl Pilate who asked Blackwell to cease contact with plaintiff.   Blackwell received a second email from Kurt Kerns later that evening which stated that he also represented plaintiff.  Blackwell did not prepare the settlement agreement and did not contact plaintiff.   Pilate entered her appearance in this case in September.   Plaintiff did not contact Blackwell after the 16th. Plaintiff determined that the $10,000 was not enough money to pay for his needed surgery.

After plaintiff's counsel entered their appearance in this case, defendants filed a motion to enforce the settlement agreement. Plaintiff objects and contends that the parties did not enter into a binding agreement.

## II.  Analysis

The district court may "summarily enforce a settlement agreement" which was reached by the parties.  United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993).  Because a settlement agreement is a contract, "[i]ssues involving the formation, construction and

-4-

enforceability of a settlement agreement are resolved by applying state contract law." United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000).  The existence of an agreement is a question of fact.  Shamberg, Johnson & Bergman, Chtd. v. Oliver, 289 Kan. 891, 901, 220 P.3d 333 (2009); Reznik v. McKee, 216 Kan. 659, 671-72 (1975).

The Kansas Supreme Court has held that the law favors settlement agreements:

> It is an elemental rule that the law favors compromise and settlement of disputes, and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it.  However, as an exception to the rule, it is well settled that a compromise settlement may be set aside on the ground of mutual mistake of the parties.

Krantz v. Univ. of Kansas, 271 Kan. 234, 241-242 (2001).

An oral settlement agreement is enforceable as long as there has been a meeting of the minds on all essential terms and the parties intend to be bound by it.  Dougan v. Rossville Drainage Dist., 270 Kan. 468, 487-88 (2000).  "[T]here must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract."  Steele v. Harrison, 220 Kan. 422, 428 (1976).  "The fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract."  Phillips & Easton Supply Co., Inc. v. Eleanor Int'l, Inc., 212 Kan. 730, 735 (1973).  Moreover, "the fact that the parties left

-5-

some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." <u>Sump v. Pamida, Inc.</u>, No. 97-4085, 1998 WL 1054949, 2 (D. Kan. Nov. 25, 1998)(quoting <u>Sheng v. Starkey Laboratories, Inc.</u>, 117 F.3d 1081, 1083 (8th Cir. 1997)).

Based on the evidence presented to the court during the evidentiary hearing, the court finds that the parties entered into an agreement to settle this case for $10,000. While the settlement agreement had not yet been drafted and signed, plaintiff did agree that he would settle his case for a set amount of money. Plaintiff's argument that the exact terms of the agreement had not yet been defined is not persuasive. Plaintiff was informed that he would have to execute the agreement in order to get the check and he agreed. Plaintiff did not make his agreement contingent upon reading and agreeing to the terms in the yet to be drafted settlement agreement. In this case, as in any personal injury claim, the settlement agreement would contain a general release of all claims against defendants. There is no evidence to support a finding that plaintiff did not understand that he must release all claims against defendants in order to receive the money. Plaintiff's argument that Blackwell was obligated to give plaintiff legal advice on matters which ordinarily might be given by counsel representing plaintiff (Doc. 45 at 9-10) is unsupported. Blackwell essentially was following Magistrate Waxse's instructions. She was not obligated to become plaintiff's lawyer.

In this case, there was a clear meeting of the minds on the essential terms. Plaintiff's change of heart a few hours later can't

-6-

undo the agreement between the parties.

Alternatively, plaintiff contends that he did not have the mental capacity to contract because of the pain medication he was taking. Under Kansas law, the test of mental capacity to contract is whether the person "possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which he is engaged." DeBauge Bros., Inc. v. Whitsitt, 212 Kan. 758, 762 (1973). Plaintiff testified that the pain medication effects his thinking and when the medication wore off he realized that the money was not sufficient. Plaintiff's testimony, however, supports a conclusion that plaintiff simply changed his mind. Plaintiff provided no support for the conclusion that he did not know what he was doing at the time the contract was entered into.

In DeClue v. General Motors Corp., No. 99-2229, 2000 WL 1472856 (D. Kan. Aug. 22, 2000), the plaintiff asserted that she was under the influence of medication at the time of the oral settlement agreement. The only evidence supporting plaintiff's position that she did not have the mental capacity to contract was her statement that her medication made her confused and she was under stress. The court found the evidence insufficient to establish that plaintiff did not have the mental capacity to enter into an agreement.

In this case, the court has no independent evidence of the effect of Loratab on an individual's mental capacity. Moreover, Blackwell had several conversations with plaintiff over the course of three days and testified that at no time did plaintiff sound like he was under the influence of medication.

Additionally, plaintiff makes the unsupported argument that

-7-

defense counsel had some sort of duty to determine that plaintiff was in the right state of mind to enter in to a settlement agreement. When plaintiff was asked if he told Blackwell that he was taking pain medications, his response was "She didn't ask me." Plaintiff has no authority to support his apparent argument that Blackwell had an obligation, ethical or otherwise, to initiate questions regarding plaintiff's mental or physical condition. Blackwell had a duty to represent her client and abide by the rules of ethics. Blackwell has done so. There is no evidence that Blackwell acted in violation of any rules in conducting settlement negotiations with a <u>pro se</u> plaintiff.

Therefore, the court finds that plaintiff had the mental capacity to contract on August 16. Accordingly, the settlement agreement must be enforced.

**III. Conclusion**

Defendants' motion to enforce the settlement agreement (Doc. 39) is granted. Plaintiff shall execute the settlement agreement and related dismissal papers within ten days of this order. Plaintiff's motion to amend (Doc. 44) and defendants' motion to strike (Doc. 50) are denied as moot.

IT IS SO ORDERED.

Dated this ___31st___ day of January 2013, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-8-